1

2

3
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
4
AT SEATTLE

5
OFFSHORE-INLAND SERVICES OF
ALABAMA, INC.,
6

7
                    Plaintiff,

8
            v.

9
R/V DEEPOCEAN QUEST (ex NADIR), IMO
No. 7347823, *in rem*, OCEAN SERVICES, LLC,
10
*in personam*, and CASEMO INTERNATIONAL,
S.A.,

11
                    Defendants.

12
DEEP OCEAN QUEST, S.A., a foreign
corporation,
13

14
                    Plaintiff,

15
            v.

16
STABBERT MARITIME YACHT & SHIP,
LLC, a Washington limited liability company d/b/a
17
Stabbert Maritime Yacht & Ship, Inc.; SMY&S,
INC., a Washington corporation d/b/a Venture
18
Pacific Marine Inc.; OCEAN SERVICES, LLC, a
Washington limited liability company;
19
STABBERT MARITIME HOLDINGS, LLC, a
Washington limited liability company;
20
STABBERT MARITIME, LLC, a Washington
limited liability company; STABBERT YACHT
21
AND SHIP, LLC, a Washington limited liability
company; STABBERT YACHT AND SHIP
22
HOLDING, LLC, a Washington limited liability
company; and DAN STABBERT and his marital
23
community d/b/a Stabbert Maritime Yacht &
Ship, Inc.,
24
                    Defendants.

CASE NO. C06-0183-JCC
*Consolidated with C06-1114-JCC*

IN ADMIRALTY

ORDER

25

26
ORDER – 1

This matter comes before the Court on a Motion for Partial Summary Judgment by Stabbert Maritime Yacht & Ship, Inc. and Stabbert Maritime Yacht & Ship, LLC and SMY&S, Inc. and for Summary Judgment by Remaining Defendants (Def.'s Mot. (Dkt. No. 41)). The Court has considered all of the papers submitted regarding this motion and determined that oral argument is not necessary.  The Court hereby GRANTS IN PART and DENIES IN PART the motion and rules as follows.

## I.    Background and Facts

Plaintiff Deep Ocean Quest, S.A. ("DOQ") is a Panamanian company that owns a marine research vessel ("the Vessel") (Pl.'s Am. Compl. ¶¶ 2.1, 3.1 (Dkt. No. 6 at 2–3).) Plaintiff and only one of the seven affiliated Defendant companies named in this lawsuit, Stabbert Maritime Yacht & Ship, Inc. (now re-named SMY&S, Inc.), entered a contract on January 1, 2005, for the management and repair/refurbishment of the Vessel. The contract, and alleged breaches thereof, are at the heart of this dispute.

The written contract is composed of two agreements. One agreement concerns primarily repair and refurbishment of the Vessel (the "VRRA" (Dkt. No. 43 at 37–42)) and the other concerns primarily management of the Vessel (the "VMA" (Dkt. No. 43 at 27–34)). The VRRA contains an "Integration and Modification" clause stating that the VRRA "is a part of and incorporated into" the VMA. (VRRA ¶ 14 (Dkt. No. 43 at 41).) It also states that the contract "shall not be modified except through a writing signed by both parties." (*Id.*) The contract (both the VMA and VRRA) was modified in writing once, on January 25, 2005. (Def.'s Mot. 2–3 (Dkt. No. 41).)

Pursuant to the contract, Dan Stabbert, as President of Stabbert Maritime Yacht & Ship, Inc. (the company being "Manager" under the contract), arranged for the relocation of the Vessel from France to Gulfport, Mississippi. (Stabbert Am. Decl. ¶ 5 (Dkt. No. 43 at 5).) Stabbert also assisted Plaintiff in forming DeepOcean, LLC, a Mississippi company (with Plaintiff as its sole member) with whom vendors could contract. (*Id.*) Stabbert proceeded to oversee the repair/refurbishment work performed both by vendors and Stabbert-company employees (though Stabbert argues that very little of the work was done

ORDER – 2

1   by Stabbert-company employees). (*Id.*)

2   In August 2005, Hurricane Katrina damaged the Vessel. (Stabbert Am. Decl. ¶ 6 (Dkt. No. 43 at

3   5–6).) The Vessel was subsequently towed to Seattle, where Stabbert Maritime Yacht & Ship, Inc.

4   continued to manage the repair/refurbishment, including hurricane repairs. (*Id.*) On January 1, 2006, Dan

5   Stabbert purported to assign the contract to another of his companies, Stabbert Maritime Yacht & Ship,

6   LLC. (Assignment (Dkt. No. 43 at 80).) In April 2006, the parties mutually terminated the contract

7   before refurbishment was complete. (Letter of Understanding Regarding Termination (Dkt. No. 43 at

8   82).) Plaintiff filed suit against all seven Defendant companies as well as Dan Stabbert and his marital

9   community, arguing in large part that much of the repair and refurbishment work that was performed on

10  the Vessel was defective. (Pl.'s Am. Compl. (Dkt. No. 6).)

11  Specifically, Plaintiff brings breach of contract, breach of warranty, accounting, and negligence

12  claims, and seeks specific performance and damages. (*Id.*) Three of the Defendant companies (the three

13  that might be considered signatories or assignees of the written contract: Stabbert Maritime Yacht &

14  Ship, Inc.; SMY&S, Inc.; and Stabbert Maritime Yacht & Ship, LLC) now argue that they are entitled to

15  summary judgment on the breach of contract, breach of warranty, and negligence claims, as well as any

16  potential consequential damages claims. (Def.'s Mot. 2 (Dkt. No. 41).) The remaining Defendants argue

17  that as non-parties to the contract, they are entitled to summary judgment as to all claims. (*Id.*)

18  Plaintiff counters, *inter alia*, that the contract is void as incomplete and ambiguous, thus

19  preventing Defendants from shielding themselves with the contract's express warranty limitations and

20  other contract-based defenses. (Pl.'s Resp. 10 (Dkt. No. 45).) Plaintiff also argues that the non-signatory

21  Defendants should not be dismissed on summary judgment because the corporate veil-piercing standard

22  has been met and all Defendants should be considered alter egos of Stabbert Maritime Yacht & Ship, Inc.

23  and held potentially liable for the defective repairs and other alleged breaches. (*Id.* at 23.)

24  **II.   Applicable Standard**

25  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

26  ORDER – 3

1    admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

2    material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.

3    56(c).  "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence

4    might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

5    626, 630 (9th Cir. 1987).  A party opposing a properly supported motion for summary judgment may not

6    rest on the mere allegations of its pleading, but must set forth specific facts showing that there is a

7    genuine issue for trial. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

8    The nonmoving party must provide more than a "mere scintilla" of evidence to show a genuine issue of

9    material fact. *Anderson*, 477 U.S. at 252. Further, it is within the court's discretion to strike any portion

10   of an affidavit that a party has submitted in support of its pleading if it is not made on personal knowledge

11   or does not set forth facts that would be admissible in evidence. FED. R. CIV. P. 56(e).

12   **III.    Choice of Law**

13       Pursuant to the express terms of both the VMA and the VRRA, the resolution of the contractual

14   dispute "shall be governed by the general maritime law of the United States, or by the laws of the State of

15   Washington in the event there is no applicable general maritime rule of law." (VMA ¶ 20 (Dkt. No. 43 at

16   33).) Admiralty law is in agreement with the parties' choice of law provision. *See Point Adams Packing*

17   *Co. v. Astoria Marine Constr. Co.*, 594 F.2d 763, 766 (9th Cir. 1979) ("Contracts for the repair of ships

18   are governed by admiralty law.").

19   **IV.    Analysis**

20       **A.    Enforceability of the Contract**

21       If the contract is valid and enforceable, the VRRA's warranty and limitation of liability provisions

22   may provide Defendants with substantial defenses to Plaintiff's claims. Plaintiff argues that the Court

23   should not enforce the written, signed VMA and VRRA agreements because the Defendant's scope of

24   work was never defined and attached to the VRRA, contrary to a provision therein stating that:

25       All plans, designs and specifications for the refurbishment and/or repair work to be

26   ORDER – 4

1    performed by Manager shall be provided by Owner to Manager in advance as Schedules to
2    this agreement. This agreement and attached Schedules shall be dated and executed by
     both parties before commencement of any work by Manager.

3    (VRRA ¶ 1 (Dkt. No. 43 at 37).) Plaintiff argues that the absence of any such Schedules renders the

4    entire contract void as incomplete and ambiguous. (Pl.'s Resp. 12 (Dkt. No. 45).)

5           The Court disagrees with Plaintiff's argument. The VRRA language quoted above plainly

6    indicates that it was Plaintiff's responsibility to attach the Schedules to the contract before Defendant

7    Stabbert Maritime Yacht & Ship, Inc. commenced any work. (VRRA ¶ 1 (Dkt. No. 43 at 19).) It should

8    be noted, however, that Plaintiff signed the VRRA on two separate occasions, even in the absence of any

9    Schedules. (VRRA of Jan. 1, 2005 (Dkt. No. 43 at 19–25); VRRA of Jan. 25, 2005 (Dkt. No. 43 at

10   37–42).) Plaintiff cannot now avoid its obligations under the contract on the basis of Plaintiff's own

11   failure to supply any Schedules because "[i]t is a principle of fundamental justice that if a promisor is

12   himself the cause of the failure of performance, either of an obligation due him or of a condition upon

13   which his own liability depends, he cannot take advantage of the failure." *Vincaino v. Microsoft Corp.*, 97

14   F.3d 1187, 1199 (9th Cir. 1996) (quoting *Highlands Plaza, Inc. v. Viking Inv. Corp.*, 435 P.2d 669, 676

15   (Wash. 1967)).

16          Plaintiff allowed Stabbert Maritime Yacht & Ship, Inc. to perform for a period of approximately a

17   year and a half despite the absence of Schedules. Basic contract principles state that:

18          although a party to a contract is generally relieved of his or her own duty of performance
            if a condition precedent to that performance has not occurred or been performed, that
19          duty can be revived by continuing to receive performance from the other party with
            knowledge that the condition precedent has not been satisfied. Stated somewhat
20          differently, if a party in default under a contract is allowed to continue to perform, this
            precludes any right of the other party to rescind the contract or declare a material breach
21          and refuse to further perform because of any known default that has already taken place.

22   14 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 40:1 (4th ed.

23   2000) (citing *Longnecker v. Brommer*, 368 P.2d 900 (Wash. 1962)); *see also* Restatement (Second) of

24   Contracts § 246(1) (stating that an obligor's acceptance of the obligee's performance, with knowledge of

25   the nonoccurrence of a condition of the obligor's duty operates as a promise to perform despite the

26   ORDER – 5

1    nonoccurrence). Plaintiff cannot now avoid the contract.

2          Moreover, the absence of Schedules does not render the contract hopelessly ambiguous. The

3    VMA (expressly meant to be considered one contract with the VRRA) states that "[a]ll vessel

4    management services whatsoever provided by Manager to Owner and/or the Vessel during the term of

5    this agreement shall be subject to the terms and conditions of this agreement." (VMA ¶ 1 (Dkt. No. 43 at

6    27).) This provision indicates that any and all Vessel repair/refurbishment work Stabbert Maritime Yacht

7    & Ship, Inc. managed between November 1, 2004 until April 27, 2006, is covered by the written

8    contract. That would include any hurricane-related repair work Defendant managed.

9          Such a conclusion is supported by Plaintiff's Amended Complaint, which defines the "Project" as

10   the contract between DOQ and Stabbert Maritime Yacht & Ship, Inc. whereby the company "promised to

11   manage, repair and refurbish the Alucia" and then states that "[t]he Project originally began in Gulfport,

12   Mississippi, but was later transferred to Seattle, Washington." (Pl.'s Am. Compl. ¶¶ 3.2, 3.6 (Dkt. No. 6

13   at 3–4).) That is to say, Plaintiff's Complaint shows that Plaintiff considered the agreement to be in place

14   both before and after the hurricane.

15         Moreover, Plaintiff has given several indications that it considered the contract to be in force. For

16   example, the parties officially terminated the contract—both the VMA and VRRA—on April 27, 2006.

17   (Letter of Understanding Regarding Termination (Dkt. No. 43 at 82).) Had the parties considered the

18   contract not to have been in force, they would have had no need to terminate it. Additionally, Plaintiff

19   sought to recover on breach of contract and breach of warranty theories, and specifically claimed that

20   Defendants breached the bargained-for warranty in the VRRA regarding repair of defects. (Pl.'s Am.

21   Compl. ¶¶ 4.5 (Dkt. No. 6 at 5).) Further, when asked by Defendants to identify the material contractual

22   breaches at issue, Plaintiff in its discovery responses referred only to the express terms of the VMA and

23   VRRA. (Pl.'s Response to Interrog. No. 7 (Dkt. No. 43 at 66).) The Court cannot see any legitimate

24   justification for not enforcing the written contract now, both as to the VMA and the VRRA.

25         However, the contract may bind only those parties who agreed to be bound by it. *See E.E.O.C. v.*

26   ORDER – 6

*Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). Because only one of the Defendant companies is a signatory party to the contract, the following analysis of the contractual defenses applies only to Defendant Stabbert Maritime Yacht & Ship, Inc. The Court will address the remaining Defendants in Part IV.F below.

**B.    The Warranty Claims**

The VRRA contains a warranty provision that is central to the outcome of this motion, so it will be reproduced here in its entirety:

> Manager warrants that it will undertake the specific refurbishment/repair work identified on the Schedules attached hereto with due diligence, and that its workmanship and the materials it provides with respect thereto shall be consistent with those offered by comparable vessel refurbishment/repair contractors.
>
> The foregoing warranty applies only to defects in workmanship and/or materials provided directly by Manager, and specifically excludes defects [sic] workmanship, materials, parts and equipment provided by Owner and/or any other contractor or vendor. In addition, the foregoing warranty applies only to defects in workmanship and/or materials provided directly by Manager which are discovered, with written notice having been provided to Manager, within one hundred twenty (120) days of when such workmanship and/or materials was or were provided.
>
> Manager's liability for breach of the foregoing warranty shall be limited to repair/replacement of the defective workmanship and/or materials and to $50,000 in the aggregate or an amount equal to Manager's twelve percent (12%) compensation with respect thereto, whichever is less. Any and all such repair/replacement work shall be performed at Manager's facility by Manager, unless the nature thereof or surrounding circumstances constitute an emergency and require the work to be performed elsewhere and/or by other than Manager; in such an emergency circumstance, if the work is performed elsewhere and/or by other than Manager, it is agreed that Manager shall not be responsible for any costs exceeding those which it would have charged for the work.
>
> THE FOREGOING WARRANTY IS THE EXCLUSIVE WARRANTY GIVEN BY MANAGER TO OWNER AND IS IN LIEU OF ALL OTHER LEGAL THEORIES, INCLUDING WITHOUT LIMITATION BREACH OF CONTRACT, NEGLIGENCE, GROSS NEGLIGENCE, PRODUCTS LIABILITY OR OTHERWISE, AND IS FURTHER IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY, WARRANTY OF FITNESS FOR A PARTICULAR USE OR PURPOSE, WARRANTY OF DESIGN OR WARRANTY OF WORKMANLIKE SERVICE.

(VRRA ¶ 9 (Dkt. No. 43 at 40–41).) Defendant Stabbert Maritime Yacht & Ship, Inc. claims that the

ORDER – 7

warranty provides it substantial defenses to Plaintiff's claims. Plaintiff argues that the warranty should not be enforced and urges the Court in any event to adopt Plaintiff's interpretation of the damages limitation. The Court addresses these issues as follows.

### 1.    The Warranty Provision is Enforceable

As a general matter, under Federal Maritime law, "[c]lear precedent holds that, absent evidence of overreaching, clauses limiting liability in ship repair contracts will be enforced." *Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1014 (9th Cir. 1999) (internal citations omitted). Plaintiff and Defendant Stabbert Maritime Yacht & Ship, Inc., two corporate entities, agreed to be bound by this warranty not just once, but twice—both at the original signing of the VRRA and VMA agreements on January 1, 2005, and again after the modifications to both agreements were made, on January 25, 2005. There is simply no evidence of overreaching.

Plaintiff argues that the warranty should not be enforced because it is fatally ambiguous, as it refers to Schedules that, as discussed in Part IV.A above, were never attached to the contract. However, the Court finds the warranty language clear and unambiguous even in the absence of Schedules: the warranty covers repair/refurbishment work that Defendant Stabbert Maritime Yacht & Ship, Inc. performed directly and it specifically does not cover work that is performed by vendors. A fact question for trial remains as to how much of the alleged defective work was performed directly by Stabbert Maritime Yacht & Ship, Inc.

Plaintiff urges the Court not to enforce the warranty also because it ostensibly fails of its essential purpose. (Pl.'s Resp. 18–19 (Dkt. No. 45).) Plaintiff points out that pursuant to the VMA, Defendant Stabbert Maritime Yacht & Ship. Inc. was required to enter all contracts with subcontractors in Plaintiff's name. (VMA ¶ 5 (Dkt. No. 43 at 28).) Plaintiff argues that because Defendant Dan Stabbert entered contracts with subcontractors in the names of other Defendant companies, including Ocean Services and Venture Pacific Marine, there is no privity of contract between the subcontractors and Plaintiff such that Plaintiff could sue the subcontractors. Plaintiff argues, in essence, that if it had expected not to be in

ORDER – 8

1  privity of contract with the subcontractors, it would not have agreed to limit Stabbert Maritime Yacht &

2  Ship, Inc.'s liability.

3       The Court is not convinced by Plaintiff's argument. Plaintiff was not barred from suing Defendant

4  Stabbert Maritime Yacht & Ship, Inc. for breach of its contractual duty to enter into all contracts with

5  vendors in Plaintiff's name. Because Plaintiff could recover damages for such a breach, the warranty did

6  not fail of its essential purpose.

7            **2.**      **Plaintiff Cannot Recover for Defects on Other Legal Theories**

8       The last paragraph of the warranty bars Plaintiff's recovery from Stabbert Maritime Yacht &

9  Ship, Inc. for defective repairs on the bases of breach of contract, negligence, and implied warranties. The

10  warranty expressly states that the warranty "is the exclusive warranty given by Manager to Owner and is

11  in lieu of all other legal theories, including without limitation breach of contract, negligence, . . . and is

12  further in lieu of all other warranties, express or implied." (VRRA ¶ 9 (Dkt. No. 43 at 41).)  Plaintiff thus

13  contracted away any rights to sue Defendant Stabbert Maritime Yacht & Ship, Inc. for defective repair

14  work on theories of breach of contract, negligence, and implied warranties.

15            **3.**      **The Damages Limitation is Ambiguous**

16       For any defective work performed directly by Stabbert Maritime Yacht & Ship, Inc., the express

17  terms of the VRRA dictate that

18         Manager's liability for breach of the foregoing warranty shall be limited to
       repair/replacement of the defective workmanship and/or materials and to $50,000 in the

19         aggregate or an amount equal to Manager's twelve percent (12%) compensation with
       respect thereto, whichever is less.

20  (VRRA ¶ 9 (Dkt. No. 43 at 40).) The parties disagree as to the meaning of this provision. Plaintiff argues

21  it means that for *each item* of defective work, Plaintiff could recover up to the repair/replacement cost

22  *plus* the lesser of $50,000 or the Manager's 12% compensation for the work. (Pl.'s Resp. 22 (Dkt. No.

23  45).) Defendant argues that the warranty "clearly limits damages at repair/replacement plus $50,000 'in

24  the aggregate' or 12%, whichever is less." (Def.'s Reply 6 (Dkt. No. 50); Errata to Reply 2 (Dkt. No.

25

26  ORDER – 9

62).) Defendant seems to argue that "in the aggregate" means, in effect, "aggregating all liability for breaches" as opposed to "aggregating the cost of repair and other damages per individual breach."

A contract "provision is not ambiguous simply because the parties suggest opposing meanings." *Shafer v. Bd. of Trs. of Sandy Hook Yacht Club Estates, Inc.*, 883 P.2d 1387, 1393 (Wash. Ct. App. 1994). Rather, it "is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning." *Id.* The Court does find the provision ambiguous: one plausible reading is that for each item of defective work Defendant performed directly, Plaintiff is entitled to repair or replacement; aggregating all claims for defective work, Plaintiff's damages are limited to a total of $50,000 or the Manager's twelve percent compensation for the defective work, if that amount is less $50,000. Another plausible reading is that for each breach of the warranty, Plaintiff is entitled to repair or replacement; aggregating the cost of repair and other damages for each breach, Plaintiff is limited to recovering $50,000, or the Manager's twelve percent compensation for the defective work, if that amount is less than $50,000. Because the Court finds the monetary limitation provision of the VRRA ambiguous, a fact question remains for trial as to the parties' intent with regard to its meaning. *See Paradise Orchards Gen. P'ship v. Fearing*, 94 P.3d 372, 377 (Wash. Ct. App. 2004) ("Generally, what the parties intend is a question of fact.") (internal citation omitted).

C.      **The Breach of Contract Claims**

Though Plaintiff contracted away any right to sue for defective repair work on the basis of breach of contract, Plaintiff may proceed on a breach of contract theory with respect to Stabbert Maritime Yacht & Ship, Inc.'s performance of its other management duties. Pursuant to the express terms of the VMA, Manager Stabbert Maritime Yacht & Ship, Inc. agreed that it "shall at all times exercise the standard of care of a reasonably prudent vessel manager under similar circumstances . . ." (VMA ¶ 4 (Dkt. No. 43 at 28).) One of Defendant Stabbert Maritime Yacht & Ship, Inc.'s enumerated duties under the contract was "procuring and maintaining insurances for the Vessel[.]" (*Id.* ¶ 5.) Plaintiff seeks to recover under a breach of contract theory for Stabbert Maritime Yacht & Ship, Inc.'s alleged failure "to properly

ORDER – 10

1  administer DOQ's insurance claim." (Pl.'s Am. Compl. ¶ 4.2 (Dkt. No. 6 at 5).) Defendant has not

2  established that Plaintiff's claim for breach of contract on this basis is barred. To the extent that Plaintiff

3  intends to proceed on its claim that "Defendants failed to submit all information, materials, documents,"

4  etc., as required by the contract (*Id.* at ¶ 4.3), such claim also is not barred.

5          **D.    The Negligence Claims**

6          Plaintiff's negligence claims as stated in its Amended Complaint stem in large part from the

7  alleged defective repair work. (Pl.'s Am. Compl. ¶¶ 4.10–4.13 (Dkt. No. 6 at 6).) However, pursuant to

8  the express warranty provision of the VRRA, Plaintiff contracted away its right to sue Stabbert Maritime

9  Yacht & Ship, Inc. for defective work on the basis of negligence. Even if it had not done so, Plaintiff's

10  negligence suit for defective repairs would be barred by the economic loss rule, which, under Admiralty

11  law, disallows negligence claims that are based on economic loss from a product's damage to the product

12  itself. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986) (stating that

13  "damage to the product itself is most naturally understood as a warranty claim"). The Fifth Circuit held

14  that "the economic loss rule adopted in the *East River* case precludes recovery in maritime tort for purely

15  economic loss stemming from the negligent performance of a contract for professional services where

16  those services are rendered as part of the construction of a vessel" and limited plaintiffs "to their

17  contractual remedies against the contract supervisor." *Employers Ins. of Wausau v. Suwannee River Spa*

18  *Lines, Inc.*, 866 F.2d 752, 755 (5th Cir. 1989); *see also Nathaniel Shipping, Inc. v. Gen. Elec. Co., Inc.*,

19  932 F.2d 366, 368 n.3 (5th Cir. 1991) (declining to adopt a distinction between services for the

20  manufacture of a new vessel and services related to the repair of an existing vessel). This Court agrees

21  with the Fifth Circuit's approach.

22          Washington law is also in accord. The "economic loss rule applies to hold parties to their contract

23  remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull*, 153 P.3d

24  864, 867 (Wash. 2007) (explaining that "[w]here economic losses occur, recovery is confined to contract

25  to ensure that the allocation of risk and the determination of potential future liability is based on what the

26  ORDER – 11

1 parties bargained for in the contract. . .”). In the instant case, the parties included a standard of care duty

2 in the express terms of the contract, and, as noted above in Part IV.C, Plaintiff may sue Stabbert

3 Maritime Yacht & Ship. Inc. for breach of that contractual duty, except with regard to the alleged

4 defective repairs/refurbishment addressed by the warranty provision.

5       **E.**      **Consequential Damages**

6       The contract provides that “[i]n no event shall Manager be responsible for any incidental, special

7 or consequential damages whatsoever, even if the possibility of such may have been or was foreseeable.”

8 (VRRA ¶ 10 (Dkt. No. 43 at  41).) It also states that “[n]either party shall be liable for consequential

9 damages, including extra expense, loss of profit, loss of use and/or business interruption damages,

10 whether resulting from breach or default hereof or otherwise, and even if the possibility of such damage

11 was or may have been foreseeable.” (VMA ¶ 16 (Dkt. No. 43 at 33).) The court has already concluded

12 that it will enforce the contract. Accordingly, to the extent that Plaintiff seeks consequential damages,

13 such relief is barred by the express terms of the contract.

14       **F.**      **The Non-Signatory Defendants**

15       The non-signatory, non-assignee Defendants seek dismissal from this action because they are not

16 parties to the contract and thus cannot be liable for its breach. (Def.’s Mot. 11–14 (Dkt. No. 41).)

17 Plaintiff in its Amended Complaint claims that it had “written and oral express and implied contracts”

18 with “Defendants.” (Pl.’s Am. Compl. ¶ 4.2 (Dkt. No. 6 at 5).) However, when asked by Defendants to

19 state the material terms of the contracts at issue, Plaintiff cited only to the VMA and VRRA as the source

20 of breached contractual obligations. (Pl.’s Response to Interrog. No. 7 (Dkt. No. 43 at 66–68).) The only

21 Defendant that is a signatory to the contract is Stabbert Maritime Yacht & Ship, Inc. The evidence in the

22 record at this stage does not show that Plaintiff had any other contracts with the non-signatory

23 Defendants.

24       The Court, then, turns to the question of whether the non-signatory Defendants can be held liable

25 for the alleged breaches of the VMA and VRRA.

26 ORDER – 12

### 1.    The Purported Assignee

Defendants argue that one non-signatory Defendant, Stabbert Maritime Yacht & Ship, LLC, was also a party to the contract because Stabbert Maritime Yacht & Ship, Inc. assigned the contract to it on January 1, 2006. (Def.'s Mot. 12 (Dkt. No. 41); Assignment (Dkt. No. 43 at 80).) It is unclear to the Court whether the assignment was valid. The VMA states that "neither party may assign this agreement or any portion of its rights or obligations hereunder without the written consent of the other party." (VMA ¶ 19 (Dkt. No. 43 at 33).) The Assignment in the record was not signed by Plaintiff. (Dkt. No. 43 at 80.) Moreover, the termination agreement of April 27, 2006 identifies the "Manager" as the original signatory, Stabbert Maritime Yacht & Ship, Inc., rather than the purported assignee, Stabbert Maritime Yacht & Ship, LLC. (Dkt. No. 43 at 82.) Defendant has not carried its burden at this stage of showing that the purported assignee is in privity to the contract.

### 2.    Piercing the Corporate Veil

Plaintiff argues that the Court should disregard the corporate formalities of Defendant companies and find that the non-signatory Defendants are potentially liable on all claims. (Pl.'s Resp. 23 (Dkt. No. 45).)

"Admiralty courts may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). However, corporate veil piercing is appropriate only "where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Id.* It is true, as Plaintiff points out, that all Defendant companies are owned by Dan Stabbert. (*See* Stabbert Am. Decl. ¶¶ 1, 2 (Dkt. No. 43 at 2–3).) But "[c]ommon ownership alone is insufficient to support disregard of the corporate form." *Chan*, 123 F.3d at 1294.

Plaintiff states that it "has uncovered substantial evidence through document discovery that Dan Stabbert exercised complete control over his companies . . . to avoid tax liabilities, liabilities under the

ORDER – 13

1 U.S. Longshoremen & Harbor Workers Act, and liability under the VMA and VRRA." (Pl.'s Resp. 23

2 (Dkt. No. 45).) In support of its contentions, Plaintiff submits numerous Declarations and a large number

3 of exhibits. Among them are the following:

4     (1) An email from Rick Bergfield, a Stabbert employee, to Dan Stabbert and his wife Lindsay

5 Stabbert, discussing the establishment of DeepOcean LLC:

6         Dan wanted a separate company to hire and pay employees so SMYS was not exposed to
        injury claims and rate increases on the USL&H. The question becomes whether we want
7         to register and pay taxes on the income we earn in MS or risk being caught and be subject
        to penalties. Technically the employees that are going to MS from WA are all Stabbert
8         Maritime Management employees and that is a C-Corporation with $50k taxable income
        which would prevent Dan from being required to file a tax return as well.
9
10 (Hernandez Decl. Ex. L (Dkt. No. 46-7 at 4).) No response from Dan Stabbert is included. Lindsay

11 Stabbert, however, responds, "Thanks Rick!" (*Id.*)

12     (2) Copies of invoices showing that Stabbert contracted with subcontractors for work on the

13 Vessel in the names of at least two of his non-signatory companies, Ocean Services and Venture Pacific

14 Marine, rather than in the name of Plaintiff or DeepOcean, LLC. (Hernandez Decl. Ex. G (Dkt. No. 46-4

 at 16–22); *Id.* Ex. EE (Dkt. No. 46-14 at 3–12).)

15     (3) Wire transfer notices showing that work done on the Vessel was paid for at least in part

16 through an account in the name of Venture Pacific Marine, one of Stabbert's non-signatory companies.

17 (Hernandez Decl. Ex. C (Dkt. No. 46-2 at 9–12).)

18     The Court is not yet convinced that the high standard for veil piercing has been met. However, the

19 Court does find that Plaintiff has at least raised an issue of material fact with regard to whether veil

20 piercing may be appropriate. Therefore, Defendants' motion to dismiss Ocean Services, LLC; Stabbert

21 Maritime Holdings, LLC; Stabbert Maritime, LLC; Stabbert Yacht & Ship, LLC; and Stabbert Yacht &

22 Ship Holding, LLC is denied.

23       **3.**    **Defendant Dan Stabbert and His Marital Community**

24     Defendants also claim that Dan Stabbert and his marital community are entitled to summary

25

26 ORDER – 14

1    judgment on all claims because Mr. Stabbert was not a party to the contract. (Def.'s Mot. 13–14 (Dkt.

2    No. 41).) Mr. Stabbert signed the VMA and VRRA in his role as President of the signatory party to the

3    contract, Stabbert Maritime Yacht & Ship, Inc. (Stabbert Am. Decl. ¶ 1 (Dkt. No. 43 at 2).) "In general,

4    a maritime agent acting for a disclosed principal is not liable for claims arising out of contracts executed

5    by the agent on behalf of his principal." *Atlantic & Gulf Stevedores, Inc. v. Revelle Shipping Agency,*

6    *Inc.*, 750 F.2d 457, 459 (5th Cir. 1985). Further, the VMA expressly states that "[n]o undertaking

7    pursuant to this agreement shall be deemed a personal contract." (VMA ¶ 15 (Dkt. No. 43 at 33).)

8       Plaintiff argues, however, that the Court should pierce the corporate veil and hold Dan Stabbert

9    and his marital community liable because Mr. Stabbert used his companies and DeepOcean, LLC, to

10   engage in fraud. (Pl.'s Resp. 5 (Dkt. No. 45).) The same veil-piercing analysis above in Part IV.F.2

11   applies here. The Court is not convinced that veil piercing is appropriate so as to reach Dan Stabbert

12   personally. However, the Court does find that Plaintiff has raised at least an issue of material fact as to

13   whether such an outcome is warranted. Therefore, Defendants' motion to dismiss Dan Stabbert and his

14   marital community from this lawsuit at this stage is denied.

15         **G.     Defendants' Motion to Strike Portions of Plaintiff's Declarations**

16       Defendant urges the Court to strike numerous portions of the Hernandez Declaration, as well as

17   some portions of the Smith and Kirilloff Declarations. (Def.'s Reply 10 (Dkt. No. 50).) The Court, in its

18   discretion, may strike portions of an affidavit which do not conform to the standards of Rule 56(e)

19   requiring that the affidavit be made on personal knowledge and set forth facts that would be admissible in

20   evidence. FED. R. CIV. P. 56(e).

21       The Court takes no position at this time on the majority of Defendants' motion to strike, since the

22   Court's decisions as explained herein do not rely on most of the material about which Defendants object.

23   Defendants do, however, object to one item that the Court includes in its analysis above: the Hernandez

24   Declaration, paragraph nine. (Def.'s Reply 10 (Dkt. No. 50).) Paragraph nine authenticates Exhibit G,

25   invoices from Offshore-Inland to Ocean Services for work done on the Vessel. Defendants ask the Court

26   ORDER – 15

1    to strike it on the basis of hearsay.

2            Hearsay is "a statement, other than one made by the declarant while testifying at the trial or

3    hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). "In the

4    absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under

5    federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804, or 807." *Orr v.*

6    *Bank of America*, 285 F.3d 764, 778 (9th Cir. 2002). In this case, the invoices are being used to prove

7    the truth of the matter asserted on the invoices—that Defendants contracted with a vendor in at least one

8    other name besides Plaintiff's, Ocean Services, Inc. Therefore, it is hearsay. However, for the purposes of

9    summary judgment, "the focus is not on the form of the evidence as it is presented in an affidavit, but

10   rather, whether at trial the matter stated in the affidavit would constitute admissible evidence." 11 JAMES

11   WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.14(1)(d) (3rd ed. 2007) (citing *Hughes v. United*

12   *States*, 953 F.2d 531, 543 (9th Cir. 1992)). In the instant case, Offshore-Inland Services of Alabama, Inc.,

13   the vendor, is a party in the consolidated case and could testify in court as to the truth of the matter

14   asserted on the invoices, i.e., that it contracted with Ocean Services rather than with Plaintiff. Indeed,

15   Brian K. Tomes, the contracts manager for Offshore-Inland, already has sworn as much in an affidavit

16   submitted in support of Plaintiff Offshore-Inland's Response to Ocean Services' motion for summary

17   judgment. (Corrected Tomes Decl. ¶¶ 2, 4 (Dkt. No. 78 at 2).) Accordingly, the Court will not strike

18   paragraph nine.

19   **V.      Conclusion**

20           For the reasons set forth in this Order, Defendants' motion is hereby GRANTED IN PART and

21   DENIED IN PART, as follows:

22           (1) Defendants' motion to dismiss Plaintiff's breach of contract claim based on deficient

23   repair/refurbishment work (Pl.'s Am. Compl. ¶ 4.2) is GRANTED;

24           (2) Defendants' motion to dismiss Plaintiff's breach of contract claim based on Defendants'

25   alleged failure to manage works in compliance with the VMA and relevant marine standards  (Pl.'s Am.

26   ORDER – 16

Compl. ¶ 4.2) is DENIED;

      (3) Defendants' motion to dismiss Plaintiff's breach of contract claim based on Defendants' alleged failure to administer an insurance claim  (Pl.'s Am. Compl. ¶ 4.2) is DENIED;

      (4) Defendants' motion to dismiss Plaintiff's claims for breach of express warranty (Pl.'s Am. Compl. ¶ 4.4) is GRANTED only to the extent that Plaintiffs seek recovery for defective work performed directly by Defendants. A fact-question for trial remains as to how much of the defective work was performed directly by Defendants as opposed to vendors. An additional fact-question remains as to the parties' intent with regard to the meaning of the ambiguous damages limitation provision.

      (5) Defendants' motion to dismiss Plaintiff's claims for breach of implied warranty (Pl.'s Am. Compl. ¶ 4.4) is GRANTED;

      (6) Defendants' motion to dismiss Plaintiff's claims for negligence (Pl.'s Am. Compl. ¶ 4.10–4.14) is GRANTED;

      (7) Defendants' motion to dismiss Plaintiff's claims for consequential damages is GRANTED;

      (8) Remaining Defendants' motion for summary judgment on all claims is DENIED.

      (9) The Court specifically DECLINES to strike paragraph nine of the Declaration of Joaquin Hernandez (Dkt. No. 46 at 4) and takes no position at this time on the balance of Defendants' motion to strike portions of Plaintiff's Declarations.

      SO ORDERED this 2nd day of October, 2007.

JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE

ORDER – 17